NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JAMES GRASSELINO, | : |
|  | : |
| Plaintiff, | : |
|  | : |
| v. | : |
|  | : |
| FIRST UNUM LIFE INSURANCE | : |
| COMPANY *et al.*, | : |
|  | : |
| Defendants. | : |
|  | : |

**Hon. Dennis M. Cavanaugh**

## OPINION

Civil Action No. 08-CV-635 (DMC)

DENNIS M. CAVANAUGH, U.S.D.J.:

        This matter comes before the Court upon motion by Defendants First Unum Life Insurance Company ("First Unum") and Morgan Stanley Disability Plan (collectively, "Defendants") for partial summary judgment dismissing the first and second causes of action of the Second Amended Complaint pursuant to Fed. R. Civ. P. 56.  Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.  After considering the submissions of the parties, and based upon the following, the Court finds that Defendants' motion for partial summary judgment is **granted**.

I.    **BACKGROUND**[1]

        Plaintiff James Grasselino began working for Morgan Stanley Dean Witter & Co. ("Morgan Stanley") in 1993, rising to the rank of Vice President of Operations before suffering from mental illness.  While an employee at Morgan Stanley, Grasselino participated in the

_____

[1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

Morgan Stanley Disability Plan (the "Plan"), which includes a provision for long-term disability.

Under the Plan, participants receive long-term disability benefits if they submit proof that they lack the ability to perform the material duties of their regular occupation. In general, participants qualifying for long-term disability receive monthly benefits until the age of 65. The Plan, however, limits benefit payments for disabilities caused by mental illness to a twenty-four month "Mental Illness Limitation." Under the Mental Illness Limitation, "[b]enefits for disability due to mental illness will not exceed 24 months of monthly payments" unless the participant meets certain exceptions, including hospitalization. The Plan defines "mental illness" as "mental, nervous or emotional diseases or disorders of any type." Additionally, the Plan includes a limiting provision stating that a claimant may not start any legal action "more than three years after the time proof of claim is required."

On April 24, 2001, Grasselino became disabled within the meaning of the Plan as a result of Bipolar Disorder, also known as manic depression. He applied for and received short-term disability benefits from First Unum through October 31, 2001, and submitted a claim for long-term disability on September 10, 2001.

First Unum denied Grasselino's claim for long-term disability benefits by letter dated October 16, 2001 ("first denial letter"). In the first denial letter, First Unum informed Grasselino that it had reviewed his long term disability claim and outlined the definition of "disability" under the plan. After defining "disability," the letter stated that the definition was subject to a provision within the Plan that "limits a benefit to a defined period." The letter then directed Grasselino to "see the enclosed policy provision which outlines the specific guidelines of this

2

provision," attaching a verbatim copy of the Mental Illness Limitation.  The Mental Illness

Limitation stated that "benefits for disability due to mental illness [would] not exceed 24 months

of monthly benefit payments," unless the claimant met certain enumerated exceptions.  The letter

also stated that First Unum had "not completed an evaluation of [Grasselino's] claim with

respect to policy provision other than those discussed above," and notified Grasselino of his right

to appeal the decision.

  Following the first denial, Grasselino's condition worsened and he was hospitalized from

October 23 through October 31, 2001.  Grasselino appealed the benefits denial on November 27,

2001, requesting that First Unum reconsider its decision after reviewing recently submitted

medical records, including the record of hospitalization.  After several months, First Unum again

denied Grasselino's claim through a letter dated January 21, 2002 ("second denial letter").

  After Grasselino's physician contacted First Unum to discuss Grasselino's claim, First

Unum reversed its decision and approved Grasselino's long-term disability claim in a letter dated

April 1, 2002 ("benefits approval letter").  The benefits approval letter contained virtually the

same language as that in the first denial letter, in that it defined the term "disability," informed

Grasselino that the definition was subject to a provision within the Plan that limits the benefit "to

a defined period," and attached the same copy of the Mental Illness Limitation.

  About eleven months later, on February 27, 2003, First Unum again sent Grasselino a

letter informing him that his benefits were subject to the twenty-four month limit contained in the

Mental Illness Limitation.  This time, however, First Unum included the Mental Illness

Limitation in the body of the letter under the capitalized and bolded heading, "What Disabilities

Have Limited Pay Period Under Your Plan?"  The letter also specified the end date of his

benefits for the first time:

> You will be eligible for maximum of twenty-four (24) months of benefits provided you
> continue to meet the policy definition of disability.  As your disability benefits started
> 10/22/2001, the current information indicates that your maximum disability would be
> paid through 10/21/2003.

When Grasselino failed to respond to multiple letters requesting certification of his

continued disability, First Unum suspended Grasselino's benefits in a letter dated September 2,

2003, which again noted the Mental Illness Limitation.  First Unum formally closed Grasselino's

claim on October 2, 2003.  Grasselino appealed the termination by providing updated medical

records documenting his disability, and First Unum reinstated his claim on December 9, 2003.

In a letter dated January 24, 2005, First Unum informed Grasselino that it had entered

into a settlement agreement with state legislators that gave him a right to seek a reassessment of

his claim pursuant to a Regulatory Settlement Agreement ("RSA").  On February 23, 2005,

Grasselino elected to have his claim reassessed on February 23, 2005, and executed a

Reassessment Information Form on October 27, 2006 stating that "any applicable statute of

limitations is tolled during the pendency of the reassessment of [the] claim."  After review, First

Unum denied Grasselino's reassessment on February 28, 2007.

Grasselino filed a three-count Complaint in this matter on February 2, 2008 in an attempt

to restore his long-term disability benefits.  A Second Amended Complaint was filed on May 22.

Defendants' filed this motion for partial summary judgment as to the first two counts on May 27.

On July 3, the parties stipulated to dismissal without prejudice of the third cause of action as

4

against Defendant Morgan Stanley.  On September 9, the parties stipulated to dismissal of the second cause of action as against both Defendants.

## II.    STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that no genuine issues of material fact exist and that the movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that no genuine issues of fact exist.  See id.  "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences—including issues of credibility—in favor of the nonmoving party."  Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp. 2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002).

## III.    DISCUSSION

Defendants contend that Grasselino's claim is time-barred under the Plan's three-year limiting provision, claiming that the limitation period began to accrue at the time of the first denial letter on October 16, 2001.  Grasselino concedes the applicability of the three-year statute of limitations, but argues that the limitation period did not begin to run until he received the benefits termination letter on February 27, 2003.  Because the Court finds that the limitation period began to accrue with First Unum's first denial letter on October 21, 2001, or, alternatively, with First Unum's benefits approval letter on April 1, 2002, Grasselino's claim is time-barred and Defendants' motion for summary judgment is granted.

A.    *Reasonableness of Contractual Limitation*

Prior to determining the relevant accrual date, the Court must assess the reasonableness of the Plan's three-year limitation provision.  ERISA does not specify a statute of limitations for non-fiduciary benefits claims.  Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 520 n.2 (3d Cir. 2007).  Instead, federal courts borrow the time limitation from the forum state claim "most analogous to the ERISA claim at hand."  Id.  Here, New York law governs the Plan and the claim is most analogous to a breach of contract claim.  Therefore, this Court would typically apply New York's six-year statute of limitations for breach of contract claims.  See N.Y. CPLR § 213(2). The parties may contract to a shorter limitation period, however, provided that the contractual period is not "manifestly unreasonable."  See Klimowicz v. Unum Life Ins. Co., No. 07-CV-4155, 2008 WL 4531958, at *2 (3d Cir. Oct. 10, 2008).  In this case, the Plan states that claimant may not start any legal action more than three years after the time proof of claim is required.  The Third Circuit has found identical language in employee benefit plans to constitute a reasonable

contractual limitation period.  See Koert v. GE Group Life Assurance Co., 231 F. App'x 117,

120 (3d Cir. 2007).  Accordingly, the Court will apply the Plan's three-year contractual

limitation.

      B.    *Accrual Date*

     Having found that the Plan's three-year contractual limitation period is enforceable, the

Court must next determine the date on which the limitation period began to run.  The accrual date

for federal claims is governed by federal law, irrespective of the source of the limitation period.

Miller, 475 F.3d at 520 (citing Romero v. Allstate Corp., 404 F.3d 212, 221 (3d Cir. 2005)).  In

the absence of a controlling federal statute, courts apply the federal "discovery rule" to determine

the accrual date.  Id.  Under this rule, the statute of limitations begins to run when a plaintiff

discovers or should have discovered the injury forming the basis of his claim.  Id.

     In the ERISA context, the discovery rule has developed into a more specific "clear

repudiation" rule, whereby a non-fiduciary cause of action accrues when a claim for benefits has

been denied.  Id.  Notably, a formal denial is not required if the repudiation by the fiduciary was

"clear" and "made known" to the beneficiary.  Id. at 520–21.  In other words, some event "other

than a denial of a claim" may trigger the statute of limitations by "clearly alerting the plaintiff

that his entitlement to benefits has been repudiated."  Id. at 521.  A "clear repudiation" may

consist of any conduct or action that communicates a "determination that a beneficiary receive

less than his full entitlement."  Id.  In Miller, for example, the Third Circuit found that an

insurance company's underpayment of benefits constituted a "clear repudiation" because it acted

both as a denial of further benefits and because the repudiation was "made known" to the

7

beneficiary upon his receipt of the payment.  Id. at 521–22.  The key inquiry is whether the plan participant had "reasonable discovery of the actionable harm."  Id. at 522.

Based on this view of the rule, the Court finds that the limitation period for Grasselino's claim began to run on October 16, 2001, or, alternatively, April 2, 2002, because letters sent by First Unum to Grasselino on those dates provided a "clear repudiation" of its obligation to pay benefits beyond the twenty-four months required by the Plan's Mental Illness Limitation.

Grasselino submitted his claim for long-term disability because of manic depression on September 10, 2001.  On October 16, First Unum sent Grasselino a letter informing him that it had completed its review of his long-term disability claim and that it was denying his claim.  In describing its decision, the letter recited the Plan's definition of "disability" and cautioned that this definition was subject to a provision within the Plan that "limits a benefit to a defined period."  The letter then directed Grasselino to "see the enclosed policy provision which outlines the specific guidelines of this provision," attaching a verbatim copy of the Plan's Mental Illness Limitation.  The letter also stated, "[w]e have not completed an evaluation of your claim with respect to policy provisions other than those discussed above." While Grasselino argues that the letter is vague because it never explicitly states that Grasselino's claim falls within the Mental Illness Limitation, the Court finds that, when read in full, First Unum's letter leaves no doubt that it was analyzing Grasselino's claim for long-term disability as a mental illness, and that the claim was subject to the attached Mental Illness Limitation.

Furthermore, the body of the letter, when read in conjunction with the attached policy provision, instructed Grasselino that he would not receive full long-term disability benefits until

8

age sixty-five because of a policy limitation.  Grasselino has not provided evidence that the letter

was unclear to him at the time and thus evidence to infer a different conclusion.  Accordingly, the

Court finds that the first denial letter of October 16, 2001 represents a "clear repudiation" of

Grasselino's claim and is therefore the date on which the limitation period began to run.

       In the alternative, the Court finds that First Unum's April 1, 2002 benefits approval letter

also constitutes a "clear repudiation" of its obligation to pay benefits beyond the twenty-four

month period under the Mental Illness Limitation.[2]  While the language of the benefits approval

letter is virtually identical to that in the October 16 letter, the Court finds that this letter may

provide an even clearer repudiation because it eliminates the risk, however speculative, that

Grasselino was unaware that his claim would continue to be analyzed as a mental illness subject

to the Mental Illness Limitation.  With respect to the October 16 denial letter, for example, it is

conceivable that Grasselino viewed the applicability of the Mental Illness Limitation as non-

binding because, even though his claim had apparently been analyzed as a mental illness, his

claim was nonetheless denied.  The April 2002 benefits approval letter removes these doubts,

however, because it grants Grasselino's disability claim while providing notice that the claim

was analyzed as a mental illness subject to the Mental Illness Limitation.  By providing an award

while simultaneously disclaiming future benefits, this letter provides "reasonable discovery"

warning to Grasselino that his entitlement to benefits beyond the twenty-four month limitation

was being repudiated.  See, e.g., Miller, 475 F.3d at 521–22 (finding that a benefits award may

---

[2]For purposes of this inquiry, it is irrelevant whether the limitation period accrued on October 16, 2001 or April 1, 2002, because, under either circumstance, the limitation period would have expired by the time this suit was filed.

constitute a "clear repudiation" as long as it is "adverse" and "made known to the beneficiary").

Finally, the Court recognizes that the language used in the benefits termination letter of February 27, 2003, in which First Unum states explicitly that Grasselino's disability "falls within" the Mental Illness Limitation and that his disability payments will terminate on a specific date, is likely the most effective repudiation of all the letters.  In Klimowicz, for example, a case involving the same insurance company and the same Mental Illness Limitation, the Third Circuit found that a letter containing language identical to that found in the benefits termination letter constituted a "clear repudiation" of future benefit payments.  See 2008 WL 4531958, at *2.  In this case, however, while it may have been preferable for First Unum to use such explicit language earlier in the process, the Court nonetheless finds that First Unum's earlier letters provided Grasselino with at least "reasonable discovery" that his claim was subject to the Mental Illness Limitation.  Accordingly, because the Court finds that the letters of October 16, 2001 and April 1, 2002 provided Grasselino with a "clear repudiation" by First Unum of its obligation to pay benefits beyond twenty-four months, Defendant's motion for partial summary judgment is granted.

   C.   *Proper Notice of Right to Appeal*

Grasselino further argues that the limitation period should have been tolled because neither the October 16, 2001 denial letter nor the April 1, 2002 approval letter informed him of his right to appeal.  Statutory and regulatory guidelines require that benefit plans provide adequate notice in writing to beneficiaries whose claim under a plan has been denied.  See 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1(f).  "When a letter terminating or denying Plan benefits

10

does not explain the proper steps for pursuing review of the termination or denial, the Plan's time bar for such a review is not triggered." Epright v. Envtl. Res. Mgmt. Inc. v. Health and Welfare Plan, 81 F.3d 335, 342 (3d Cir. 1996).

Grasselino cannot make this argument in good faith. First, the October 16, 2001 denial letter contained language notifying Grasselino of his right to appeal and the proper procedural steps to take to exercise those rights. Grasselino subsequently exercised those rights, appealing First Unum's denial. In the appeal, he requested only that First Unum review the medical records to support his claim for long term disability and did not challenge the fundamental issue here, whether the Plan subjected his claim to the Mental Illness Limitation. Second, under the standard set forth in Miller, the October 16, 2001 denial letter and the April 1, 2002 benefits approval letters "triggered" the limitation period, because this is when Grasselino had "reasonable discovery of actionable harm." In any event, Epright deals only with a denial or termination of benefits, and says nothing about the limitation period being tolled after the "triggering" of the accrual period. See, e.g., Miller, 475 F.3d at 521–23 (finding that limitation period began to accrue upon beneficiary's receipt of underpayment despite beneficiary not being advised of right to appeal underpayment); Klimowicz, 2008 WL 4531958 (finding limitation period accrued when insurer made "clear repudiation" of obligation to pay future benefits under Mental Illness Limitation, even though insured was not informed of his appellate rights until receiving a benefits termination letter two years later). Accordingly, because the Court finds that Grasselino was informed of his appellate rights in the October 16 benefits denial letter, and, alternatively, because the limitation period was "triggered" by the April 1 benefits approval

11

letter, Defendant's motion for partial summary judgment is granted.

**IV.    CONCLUSION**

      For the reasons stated, the Court finds that Defendants' motion for partial summary judgment with regards to whether Defendants breached the Plan by denying Grasselino long-term disability benefits is **granted**.  An appropriate Order accompanies this Opinion.


                                          S/Dennis M. Cavanaugh
                                   Dennis M. Cavanaugh, U.S.D.J.

| | |
|---|---|
| Date: | December 19th, 2008 |
| Orig.: | Clerk |
| cc: | All Counsel of Record |
| | Hon. Mark Falk, U.S.M.J. |
| | File |